IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Susan Ball, and Jan Witteried,
Administrators of the Estate of Donald
Hedstrom,

      . Plaintiff,

           v.

Cherie Kotter, the Kotter Family Trust,
and Hope Geldes,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO.

FILED: MARCH 19, 2008
08CV1613        AEE
JUDGE DOW
MAGISTRATE JUDGE VALDEZ

## COMPLAINT

Plaintiff, the estate of Donald Hedstrom, by and through its attorneys, Michaels &
May, P.C., state as follows for their complaint against defendants Cherie Kotter, the
Kotter Family Trust and Hope Geldes:

### STATEMENT OF THE CASE

1.      The estate of Donald Hedstrom (the Estate"), by and through the Estate's
administrators, seeks to recover for harms suffered in the course of two residential real
estate transactions involving condominiums located in the Lake Point Towers Building
on 505 N. Lakeshore Avenue.

### PARTIES

2.      Prior to his death, Plaintiff Donald Hedstrom was a resident of Naples,
Florida.

3.     Susan Ball and Jan Witteried are the daughters of Donald Hedstrom and are the duly appointed administrators of the estate of Donald Hedstrom.  A true and accurate copy of the letters of administration is attached hereto as Exhibit ("Ex.") 1.

4.     Ms. Ball and Ms. Witteried are both residents of Indiana.

5.     Defendant Cherie Kotter is a resident of either Chicago, Illinois or Vincennes, Indiana.

6.     Ms. Kotter is a real estate broker licensed in Illinois.

7.     Cherie Kotter is the sole trustee and sole settlor of the Kotter Family Trust.

8.     Defendant Hope Geldes is a resident of Oak Park, Illinois.

9.     Ms. Geldes is licensed to practice law in Illinois.

10.    The real property that is part of the subject matter of this suit is located at 505 N. Lakeshore Drive, Chicago, Illinois.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000 and no Plaintiff is a resident of the same state as any Defendant;

12.    Venue in this Court is proper under 28 U.S.C. § 1391 in that all defendants reside within the Northern District of Illinois.

## FACTS

13.    On or about July 1, 2006 Donald Hedstrom determined to purchase two condominium units located in the Lake Point Tower building at 505 N. Lakeshore Drive, Chicago, Illinois.

2

14.    Mr. Hedstrom intended to take title jointly with his former wife, Ms. Cherie Kotter, and to have the use and enjoyment of both two condominium units during his lifetime.

15.    Mr. Hedstrom further intended to retain an ownership interest in each of the two Lake Point Tower condominium units and specifically provided for such an interest to pass to his estate upon his death and pursuant to his last will and testament.

### UNIT 4705

16.    On July 18, 2006 Donald Hedstrom entered into a contract with Ricardo Manera to purchase of a condominium known as "unit 4705" in the Lakepoint Towers building at 505 North Lakeshore Drive Chicago, IL.  A true and accurate copy of the sales contract for this transaction is attached hereto as Ex. 2.

17.    Ms. Cherie Kotter worked as Mr. Hedstrom's broker for the purchase of unit 4705.

18.    On July 26, 2006 attorney Hope Geldes agreed act as Mr. Hedstrom's attorney in connection with the purchase of unit 4705.  A true and accurate copy of the letter confirming Ms. Geldes' engagement is attached hereto as Ex. 3.

19.    Mr. Hedstrom provided more than $600,000 for the purchase and payment of buyer's fees for unit 4705.

20.    Ms. Geldes' July 26, 2006 letter did not disclose that she would represent or was representing any party in connection with the purchase of unit 4705 other than Mr. Hedstrom.

21.    Although requested by the Estate through Ms. Ball and Witteried to provide all of her files for the unit 4705 transaction to the Estate's attorneys, Ms. Geldes

3

provided no documentation of any communication in which she disclosed to Mr. Hedstrom that she was representing or would represent any other party to that transaction.

22.    In exchange for her representation of Mr. Hedstrom with respect to the purchase of unit 4705, Ms. Geldes accepted a fee from Mr. Hedstrom.

23.    Ms. Geldes represented other parties in the purchase of unit 4705 but, on information and belief, never disclosed these relationships or the possible conflicts of interest resulting from them to Mr. Hedstrom.

24.    On July 31, 2006, Ms. Geldes received an e-mail from Mr. Hedstrom directing her to structure the purchase of unit 4705 and another condo unit at 505 N. Lakeshore Drive ("unit 1518") so that Mr. Hedstrom and Ms. Geldes would own each unit "jointly."  A true and accurate copy of this e-mail is attached hereto as Ex. 4.

25.    At 10:04 am on August 1, 2006 Ms. Geldes sent an e-mail to Mr. Hedstrom and Ms. Kotter, in which Ms. Geldes indicated that she wanted to speak with Mr. Hedstrom to clarify under which of the various forms of "joint ownership" Mr. Hedstrom intended to take title to unit 4705 and unit 1518.    A true and accurate copy of this e-mail is attached hereto as Ex. 5.

26.    Less than one-half hour later, at 10:31 am on August 1, 2006, Ms. Kotter e-mailed a response to Ms. Geldes' email, but did not send a copy of her response to Mr. Hedstrom.    A true and accurate copy of this e-mail is attached hereto as Ex. 6.

27.    Ms. Geldes provided the files she maintained during her representation of Donald Hedstrom in the purchase of real estate at 505 N. Lakeshore Drive to the Estate.    These files disclose no communications in which Ms. Geldes informed Mr.

Hedstrom of the ramifications of the various forms of "joint ownership" under which Mr. Hedstrom could take title of the two units.

28.    Through her August 1, 2006 e-mail, Ms. Kotter directed Ms. Geldes to place title to the 4705 unit with herself and Mr. Hedstrom as "joint tenants with right of survivorship."

29.    Unit 4705 was transferred to Mr. Hedstrom and Ms. Geldes as joint tenants with right of survivorship in August 2006.

30.    Ms. Kotter took a broker's commission on the purchase of unit 4705.

31.    Ms. Kotter transferred the title of unit 4705 to Larry Peckler via a warranty recorded October 5, 2007.

## UNIT 1518

32.    Ms. Kotter served as the broker for the purchase of unit 1518.

33.    Ms. Geldes represented Mr. Hedstrom in the purchase of unit 1518.

34.    Ms. Geldes represented both Mr. Hedstrom and Ms. Kotter with respect to the purchase of unit 1518.

35.    Mr. Hedstrom paid all of Ms. Geldes' fees with respect to the purchase of unit 1518.

36.    Mr. Hedstrom provided the purchase money and paid the buyer's fees for the purchase of unit 1518.

37.    Although Mr. Hedstrom intended to take title to unit 1518, he received no legal interest in unit 1518.

38.    Title was registered to "the Kotter family trust" at the direction of Ms. Kotter and Ms. Geldes.

## COUNT I

## Breach of Fiduciary Duty by a Real Estate Broker

39.    Plaintiffs reallege ¶¶ 1-38 as though fully set forth herein.

40.    Ms. Kotter was engaged as a professional real estate broker with respect to unit 4705 and unit 1518.

41.    Ms. Kotter charged a brokers' commission for her services with respect to unit 4705 and unit 1518.

42.    Ms. Kotter had a fiduciary duty to represent the interests of her client, Mr. Hedstrom, to the exclusion of her own personal interest.

43.    Ms. Kotter breached her fiduciary duties to Mr. Hedstrom by using her position as a broker to take title to unit 4705 in a way that would divest Mr. Hedstrom and his estate of any legal interest in the property upon his death.

44.    Ms. Kotter breached her fiduciary duties to Mr. Hedstrom by using her position as a broker to take title to unit 1518 in the name of the Kotter family trust.

45.    As a result of Ms. Kotter's breaches of her fiduciary duties, she deprived the estate of Donald Hedstrom of a legal interest in real property worth more than $1 million, which was purchased solely with funds belonging to Donald Hedstrom.

46.    As a result of Ms. Kotter's breaches of her fiduciary duties, Mr. Hedstrom understood that his estate would retain a legal interest in unit 4705 upon his death.

## COUNT II

## Legal Malpractice

47.    Plaintiffs reallege ¶¶ 1-49 as though fully set forth herein.

6

48.   Ms. Geldes served as Mr. Hedstrom's attorney with respect to the purchase of unit 4705 and unit 1518.

49.   Ms. Geldes also represented other parties to the purchase of unit 4705 and unit 1518.

50.   Based on the lack of any documentation in Ms. Geldes' files for the unit 4705 and unit 1518 transactions of any communication disclosing her representation of other parties to the purchase of these units, plaintiffs are informed and believe that Ms. Geldes failed to disclose these relationships to Mr. Hedstrom.

51.   Ms. Geldes had a duty to represent the interests of Mr. Hedstrom with respect to the purchase of unit 4705 unit 1518.

52.   Ms. Geldes knew or should have known that Mr. Hedstrom's interests could be affected by the form in which he took title to units 4705 and 1518.

53.   A reasonable attorney in Ms. Geldes' position would have recognized that Ms. Kotter's direction to place title in unit 4705 as "joint tenants with right of survivorship," given without apparent notice to Mr. Hedstrom, placed the interests of Mr. Hedstrom and Ms. Kotter in direct conflict.

54.   Ms. Geldes had a duty either to disclose the conflict of interest between her clients with respect to the purchase of unit 4705 or to withdraw her representation as to both clients.

55.   A reasonable real estate attorney in Ms. Geldes' position would have recognized that Ms. Kotter's direction to place title in unit 1518 in her own name placed the interests of Mr. Hedstrom and Ms. Kotter in direct conflict.

56.     Ms. Geldes had a duty either to disclose the conflict of interest between her clients with respect to the purchase of unit 1518 or to withdraw her representation as to both clients.

57.     Ms. Geldes accepted Ms. Kotter's directions with respect to unit 4705 and unit 1518.

58.      Based on the lack of any documentation in Ms. Geldes' files regarding the unit 4705 and unit 1518 transactions of any communication disclosing her representation of other parties to the purchase of these units, plaintiffs are informed and believe that Ms. Geldes never disclosed the legal effect of Ms. Kotter's directions with respect to the manner in which title in those units was to be held to Mr. Hedstrom.

59.     As a result of Ms. Geldes' actions and omissions, Mr. Hedstrom understood that his estate would retain a legal interest in unit 4705 upon his death.

60.     A reasonable attorney in Ms. Geldes' position would have recognized that there is a legal presumption of fraud when a person serves as a broker with respect to a real estate transaction and also takes title to the property.

61.     A reasonable attorney in Ms. Geldes' position would either have informed Mr. Hedstrom about the presumption of fraud arising from the nature of the purchase arrangements for unit 4705 or 1518, or withdrawn as counsel.

62.     As a result of Ms. Geldes actions and omissions, Ms. Geldes permitted Mr. Hedstrom to be deprived of any interest in two parcels of real property in which he intended to retain an ownership interest, and for which he paid more than $1 million in aggregate.

WHEREFORE the Plaintiffs respectfully ask that this Court

Order an equitable accounting to identify all proceeds of the sale of unit 4705.

Award a judgment jointly and severally against Cherie Kotter and Hope Geldes for damages in an amount equal to the sum of the broker's and attorney's fees and commissions with respect to the purchase of units 4705 and unit 1518 plus the greater of the combined purchase price or combined current market value of unit 4705 and unit 1518;

Award a judgment transferring title to unit 4705 and unit 1518 to the estate of Donald Hedstrom.

Award such other and further relief as the Court deems just and proper under the circumstances.

DATED:        March _19_, 2007

Respectfully submitted,

Susan Ball and Jan Witteried as Administrators of the Estate of Donald Hedstrom

BY: _____

One of Their Attorneys

Jan Michaels,
John Duczynski,
Jeremy Schulze
MICHAELS & MAY, P.C.
Sears Tower
233 S. Wacker Drive, Suite 5620
Chicago, IL 60606
Phone: (312) 428-4722



IN THE CIRCUIT COURT FOR COLLIER COUNTY, FLORIDA

PROBATE DIVISION

IN RE: ESTATE OF

File No. 07- 229-CP

DONALD C. HEDSTROM,

Division Probate

Deceased.

Bond Received
Date
4/9/07
by: _____, D.C.

LETTERS OF ADMINISTRATION
(multiple personal representatives)

TO ALL WHOM IT MAY CONCERN:

WHEREAS, <u>DONALD C. HEDSTROM</u>, a resident of Collier County, Florida, died on January 20, 2007, owning assets in the State of Florida, and

WHEREAS, <u>SUSAN L. BALL</u> and <u>JAN K. WITTERIED</u> have been appointed Personal Representatives of the estate of the decedent and have performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned Circuit Judge, declare <u>SUSAN L. BALL</u> and <u>JAN K. WITTERIED</u> duly qualified under the laws of the State of Florida to act as Personal Representatives of the estate of <u>DONALD C. HEDSTROM</u>, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

Ordered on _____April 11_____, 2007.

_____
Circuit Judge

I, Dwight E. Brock, Clerk of Courts in and for Collier County, do hereby certify that the above instrument is a true and correct copy of the original which is on file in my office in the courthouse in Naples, Collier County, Florida, and that same is in full force and effect this date.

Witness under my hand and seal this 21 day of Aug 20.07
Dwight E. Brock

By: _____
                                    Deputy Clerk

*** 4002964 OR: 4213 PG: 2921 ***
RECORDED in the OFFICIAL RECORDS of COLLIER COUNTY, FL
04/16/2007 at 08:28AM DWIGHT E. BROCK, CLERK
REC FEE    10.00

Retn:
PROBATE DEPT



FILE No.520 07/21 '06 15:15   ID:HABITAT CO.   FAX:3123371069   PAGE 4/ 8

**Chicago REALTORS**

**CHICAGO ASSOCIATION OF REALTORS®**
**CONDOMINIUM REAL ESTATE SALE CONTRACT**
(including condominium townhome)

1. This Contract is made between _Donald P. Holloman_ ("Seller") (collectively,
2. "Parties"), to convey the real property known as _505 Lakeshore Dr. Unit 4705   Chicago, IL_ ("Property"), including parking
3. _(Address)   (City)   (State)   (Unit No.)_
4. space number _(check applicable)_ _deeded_, limited common element _, assigned. A fully executed original of this Contract shall be held by Listing Broker. The date
5. of the offer of this Contract is _7/18/06_   200_.

**ACCEPTANCE DATE**

97. Buyer Signature _Donald P. Holloman_   Seller Signature _Ricardo Manera_   7/18/06
98. Buyer Signature   Seller Signature
99. _Cell # 812-887-2653_   _RICARDO MANERA   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_
100. Print Buyer(s) Name(s)   Social Security #   Print Seller(s) Name(s)   Social Security #
101.   _505 N. LAKESHORE DR. #705   CHICAGO  IL 60611_
102. Address   City   State   Zip   Address   City   State   Zip
103.   _(312) 630-2131   manera @ cinc.edu_
104. Phone/Fax #   Email   Phone/Fax #   Email
105. FOR INFORMATIONAL PURPOSES   _MAGNIFICENT MILE REALTY - ALEXANDER Teller 13092_
106. _HABITAT REALTY - Mera Rattal_ _0.5. Rattal_   Listing Office and Agent   MLS #
107. Seller Office and Agent   MLS #   _125 E. DELAWARE PL.  Chicago, IL, 60611_
108. _1510 N Wells_   Chicago  Illinois   Address   City   State   Zip
109. Address   City   State   Zip   _(312)  593-2498   Fax (301) 587-7322_
110. Phone # _312-943-1516_   Fax #   Phone #   Fax #
111. Buyer's Attorney   Email   Seller's Attorney   Email
112. _To be determined_
113.
114. Address   City   State   Zip   Address   City   State   Zip
115. Phone #   Fax #   Phone #   Fax #
116.

FILE No.520 07/21 '06 15:15   ID:HABITAT CO.                FAX:3123371063                PAGE 5/ 8

## 7  GENERAL PROVISIONS

A. **Prorations.** Rent, interest on existing mortgage, if any, water taxes and other items shall be prorated to date of closing. If the Property is improved, but the last available tax bill is on vacant land, the Parties shall reprorate taxes when the bill as improved property is available. Security deposits, if any, shall be paid to Buyer at closing.

B. **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

C. **Title.** At least five days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at closing by payment of money, Seller may have those exceptions removed at closing by using the proceeds of the sale.

D. **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or commercial delivery service, by mail-o-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of execution, negotiating, and finalizing this Contract. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

E. **Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the Listing Broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the Escrowee's intended disposition of the Earnest Money within 60 days after the notice. However, Seller and Buyer acknowledge that if Escrowee is a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. If Escrowee is not a licensed real estate broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispose the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of those claims and demands.

F. **Operational Systems.** Seller represents that the following, if at a common element, being the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of closing. Buyer shall have the right to inspect the Property during the 48-hour period immediately prior to closing to verify that they are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

G. **Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 18 is attached.

H. **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("Code Violation Notice"). If a Code Violation Notice is received after the Acceptance Date and before closing, Seller shall promptly notify Buyer of the Notice.

I. **Heating Cost Disclosure.** If the Property is located in the City of Chicago, Seller and Buyer shall comply with provisions of Chapter 5-16-010 of the Chicago Code of Ordinances concerning Heating Cost Disclosure for the Property.

J. **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

K. **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

L. **Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

M. **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

N. **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

O. **Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

P. **Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total rent related to the violation that is below $250.00.

Q. **Time.** Time is of the essence for purposes of this Contract.

R. **Number.** Wherever appropriate within this Contract, the singular includes the plural.

S. **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

T. **Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, and not calendar days. Business days are Monday, Tuesday, Wednesday, Thursday, and Friday, excluding all official federal and state holidays.

U. **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order as the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, or nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

V. **Brokers.** The Real Estate Brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the Listing Broker in a multiple listing service in which the listing and Cooperating Broker both participate.

# 1931854_v2

FILE No.520 07/21 '06 15:16    ID:HABITAT CO.        FAX:3123371063        PAGE  6/ 8

## Illinois Association of REALTORS®
## RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address:  505  N. LAKE SHORE DR. # 4705
City, State & Zip Code:  CHICAGO  IL  60611
Seller's Name:  RICARDO  VARELA

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of APRIL 3, 2004 and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not intended to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes", (correct), "no" (incorrect) or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| | YES | NO | N/A | |
|---|---|---|---|---|
| 1. | X | | | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | | | | I am aware of flooding or recurring leakage problems in the crawlspace or basement. |
| 3. | | | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | | | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | | | I am aware of leaks or material defects in the roof, ceilings or chimney. |
| 6. | | | | I am aware of material defects in the walls or floors. |
| 7. | | | | I am aware of material defects in the electrical system. |
| 8. | | | | I am aware of material defects in the the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | | | I am aware of material defects in the well or well equipment. |
| 10. | | | | I am aware of unsafe conditions in the drinking water. |
| 11. | | | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | | | I am aware of material defects in the fireplace or woodburning stove. |
| 13. | | | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | | | I am aware of underground fuel storage tanks on the property. |
| 21. | | | | I am aware of boundary or lot line disputes. |
| 22. | | | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |

Note:  These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note:  These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

_____
_____
_____

Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller:  Ricardo Varela        Date:  4/3/04
Seller: _____        Date: _____

PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____  Date: _____  Time: _____
Prospective Buyer: _____  Date: _____  Time: _____

108 Revised 1/00                    COPYRIGHT © BY ILLINOIS ASSOCIATION OF REALTORS®

## RESIDENTIAL REAL PROPERTY DISCLOSURE ACT
### SENATE BILL 828 (PUBLIC ACT 92-111) EFFECTIVE OCTOBER 1, 1994

AN ACT relating to disclosure by the seller of residential real property.

Section 1. Short title. This Act may be cited as the Residential Real Property Disclosure Act.

Section 5. As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

Section 10. Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

Section 15. The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgement, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgement or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

Section 20. A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

Section 25. Liability of seller. (a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

Section 30. Disclosure supplement. If prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

Section 35. Disclosure report form. The disclosure required of a seller by this Act, shall be made in the following form: [form on reverse side]

Section 40. Material defect. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If no material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act, the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at the address indicated for the residential real property on the Report.

Section 45. This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

Section 50. Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

1) personal or facsimile delivery to the prospective buyer;

2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement, or

3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the Prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to an authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

Section 55. Violations and damages. If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

Section 60. No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

Section 65. A copy of this Act, excluding Section 25, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Section 99. This Act takes effect on October 1, 1994.

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### Purchaser's Acknowledgment (initial)

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home.*

_____ (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

### Agent's Acknowledgment (initial)

____X____ (f) Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

### Certification of Accuracy

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

Seller _Alcacetta Aracelle_ Date 4/3/06    Purchaser _____ Date  /  /

Seller _____ Date  /  /    Purchaser _____ Date  /  /

Agent _Alexander Gebb Realty_ Date 4/3/06    Agent _____ Date  /  /

Property Address _605 N. Lake Shore Dr. # 4705 Chicago IL 60611_

Form 420    Revised 10/96    *(This disclosure form should be attached to the Contract to Purchase)*



LAW OFFICES OF

PETER J. LATZ

104 NORTH OAK PARK AVENUE
SUITE 200
OAK PARK, ILLINOIS 60301
TELEPHONE (708) 524-2300
FACSIMILE (708) 386-1462

HOPE F. GELDES
of Counsel
Hope@PeterLatzLaw.com

July 26, 2006

Via e-mail and Regular U.S. Mail

Mr. Donald Hedstrom
1340 Jewel Box Lane
Naples, Florida

Re: *Purchase of 505 N. Lakeshore Drive, Unit 4705, Chicago, Illinois (the "Property")*

Dear Mr. Hedstrom:

Per your request, I would be pleased to represent you in the purchase of your new home. Please allow this letter to confirm the terms of our representation. I need your cooperation in promptly completing your investigation and other work within the Contract's time deadlines and keeping me informed of all matters affecting the home. Your responsibilities include deciding whether to purchase the home and, after deciding to purchase, in making arrangements to complete the purchase. A list outlining some, but not all, of your responsibilities is attached to this letter. Your failure to complete your responsibilities within the Contract's time deadlines may result in financial risk and loss. Except for your mortgage application with the lender, **do not sign** any documents in connection with the Contract without first consulting with me.

The fee for our professional services is $525.00 for contract review and for representation through closing, or contract termination. This fee has been discounted by $50.00 each contract, because of your multiply contracts. In the event of a dispute or if any unusual matters arise and we are required to perform additional services, any extra time will be billed at our regular hourly rate of 205.00. The fee is not contingent on a closing. Also attached is a list of matters that you may wish to consider in evaluating the home. This list is not all inclusive. You should familiarize yourself with the risks inherent in purchasing and owning property and determine what additional matters you should consider.

The subject Contract was executed and accepted on July 18, 2006. Pursuant to the Professional Inspection provision you have the right to obtain a home inspection of the property. If you wish to request repairs you must provide me with a copy of the Inspection Report and a list of defects which require repair by the Seller, no later than Tuesday, August 1, 2006. I will prepare a letter to the Seller's attorney requesting the required repairs or a credit at closing. Please know that requests for repairs re-open the contract negotiations and the request may be agreed to or denied by the Seller. You must also secure a written mortgage commitment letter, a copy which must be faxed to me, no later than Monday, July 31, 2006.

The professional services will include only the following:

LAW OFFICES OF
PETER J. LATZ

Mr. Donald Hedstrom
July 27, 2006
Page -2-

A.    Review of the contract, and if permitted under the terms of the Contract, negotiate and prepare needed changes with Sellers or their counsel if appropriate; **Condominium declaration, budgets and bylaws will not be reviewed as part of the legal services unless requested by you.** The additional legal fee fro this work can be quoted, if requested.

B.    Monitor contingency deadlines set forth in the Contract and send notices requesting extensions of deadlines or cancellation of the Contract, if necessary;

C.    Timely raise the initial inspection and final inspection walk-through deficiencies that have been brought to my attention with Seller or their counsel;

D.    Schedule and attend the closing;

E.    Review Seller's closing documents for compliance with the Contract, including the closing and title insurance requirements and review of the final closing statement of Seller and your lender; and

F.    Review the loan documents to confirm the interest rate and payment period conform to your mortgage loan commitment.

Please review the foregoing and, if it meets with your approval, sign the enclosed copy of this letter and return it to me in the enclosed envelope.  Again, we are pleased that you have retained us to represent you, and we look forward to working with you on this matter.  If you have any questions, please do not hesitate to call.

Very Truly Yours,

Hope F. Geldes

APPROVED AND AGREED to this _____ day of July, 2006.

_____
Donald Hedstrom



## Hope Geldes

**From:**     <donhedstrom@juno.com>
**To:**       <hope@peterlatzlaw.com>
**Sent:**     Monday, July 31, 2006 4:33 PM
**Subject:**  Re: Attorney letter for 1518

For the last time, I'm going to repeat that there is to be NO mortgage on units 1518 and

4705 that I am purchasing in Lake Point Tower. I have made arrangements to have the

required funds available at the day of closing or before.  Also I have written in at least 4

documents that  these 2 properties will be jointly owned by Cherie Kotter and me and you

have copies of these. Please comply or I wll have to get another attorney.

       Donald Hedstrom



## Hope Geldes

| | |
|---|---|
| From: | "Hope Geldes" <hope@peterlatzlaw.com> |
| To: | <donhedstrom@juno.com> |
| Cc: | "Cherie Kotter" <cherie@habitatbrokerage.com> |
| Sent: | Tuesday, August 01, 2006 10:04 AM |
| Subject: | Re: Attorney letter for 1518 |

Dear Don,  Please allow me to explain my letter. Cherie wanted to have an appraisal of both units to ensure that you did not overpay for either unit. In order to do this we had to request an extension on the mortgage contingency. If the appraisal comes in well under the contract price this will allow you to renegotiate the purchase price and hopefully purchase the unit at the lower apprised value. If you do not wish to have an appraisal I can immediately send another letter. Secondly, Cherie had asked me to discuss with you both, whether you wanted to own it as joint tenants with right of survivorship, tenants in common or set up a living trust. She indicated that you would be unavailable until the end of this week because of heart surgery. The seller's attorney will not be preparing the deeds until  the end of next week. We can change title at any time.  Please advise if you would like to continue with this strategy.
Sincerely,

Hope Geldes
Peter J. Latz & Associates LLC
104 N. Oak Park Ave., Suite 200
Oak Park, IL 60301
Tel (708) 524-2300
Fax (708) 386-1462
email: Hope@peterlatzlaw.com

CONFIDENTIALITY NOTE:
This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

IRS CIRCULAR 230 DISCLOSURE:
Any advice expressed above (including any attachments hereto) as to tax matters was neither written nor intended by the sender or Peter J. Latz & Associates LLC to be used and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed under U.S. tax law. If any person uses or refers to any such tax advice in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement to any taxpayer, then (i) the advice was written to support the promotion or marketing (by a person other than Peter J. Latz & Associates LLC) of that transaction or matter, and (ii) such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

---- Original Message ----
From: donhedstrom@juno.com
To: hope@peterlatzlaw.com
Sent: Monday, July 31, 2006 5:33 PM
Subject: Re: Attorney letter for 1518

For the last time, I'm going to repeat that there is to be NO mortgage on units 1518 and

4705 that I am purchasing in Lake Point Tower. I have made arrangements to have the



## Hope Geldes

| | |
|---|---|
| From: | "Cherie Kotter" <cheriekotter@hotmail.com> |
| To: | <hope@peterlatzlaw.com> |
| Sent: | Tuesday, August 01, 2006 10:31 AM |
| Subject: | RE: atty letter and home inspection issues 4705 |

August 1

Hope

Regarding 4705

Please put deed to that unit in the names Don C. Hedstrom and Chrie S Kotteras joint tenants with rights of survivorship

The repairs sound good I only want to add that the seller replaces the panel box with a code size electical service prior to closing

Thank youi
>
>Hope Geldes
>Peter J. Latz & Associates LLC
>104 N. Oak Park Ave., Suite 200
>Oak Park, IL 60301
>Tel (708) 524-2300
>Fax (708) 386-1462
>email: Hope@peterlatzlaw.com
>
>CONFIDENTIALITY NOTE:
>This e-mail and any attachments are confidential and may be protected by
>legal privilege. If you are not the intended recipient, be aware that any
>disclosure, copying, distribution or use of this e-mail or any attachment
>is prohibited. If you have received this e-mail in error, please notify us
>immediately by returning it to the sender and delete this copy from your
>system. Thank you for your cooperation.
>
>IRS CIRCULAR 230 DISCLOSURE:
>Any advice expressed above (including any attachments hereto) as to tax
>matters was neither written nor intended by the sender or Peter J. Latz &
>Associates LLC to be used and cannot be used by any taxpayer for the
>purpose of avoiding tax penalties that may be imposed under U.S. tax law.
>If any person uses or refers to any such tax advice in promoting, marketing
>or recommending a partnership or other entity, investment plan or
>arrangement to any taxpayer, then (i) the advice was written to support the
>promotion or marketing (by a person other than Peter J. Latz & Associates
>LLC) of that transaction or matter, and (ii) such taxpayer should seek
>advice based on the taxpayer's particular circumstances from an independent