IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

SUSAN BALL and JAN WITTEREIED,        )
Administrators of the Estate of       )
Donald Hedstrom,                      )
                                      )    08 C 1613
                    Plaintiffs,       )
                                      )
         v.                           )
                                      )
CHERIE KOTTER, KOTTER FAMILY          )    JURY TRIAL DEMANDED
TRUST, and HOPE GELDES,               )
                                      )
                    Defendants.       )

<u>VERIFIED ANSWER TO COMPLAINT</u>

Defendants Cherie Kotter and Kotter Family Trust, by their attorney, answer plaintiff's complaint and state that:

1.   The Estate of Donald Hedstrom ("the Estate"), by and through the Estate's administrators, seeks to recover for harms suffered in the course of two residential real estate transactions involving condominiums located in the Lake Point Towers Building on 505 N. Lake Shore Avenue.

ANSWER:  They admit that the Estate of Donald Hedstrom brings this action and otherwise deny paragraph 1.

2.   Prior to this death, plaintiff Donald Hedstrom was a resident of Naples, Florida.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning paragraph 2 and, as a result, deny it.

3.   Susan Ball and Jan Witteried are the daughters of Donald Hedstrom and are the duly appointed administrators of the

estate of Donald Hedstrom.  A true and accurate copy of the letters of administration is attached hereto as Exhibit 1.

ANSWER:  They admit paragraph 3.

4.  Ms. Ball and Ms. Witteried are both residents of Indiana.

ANSWER:  They admit paragraph 4.

5.  Defendant Cherie Kotter is a resident of either Chicago, Illinois or Vincennes, Indiana.

ANSWER:  They admit paragraph 5.

6.  Ms. Kotter is a real estate broker licensed broker in Illinois.

ANSWER:  They admit paragraph 6.

7.  Cherie Kotter is the sole trustee and sole settlor of the Kotter Family Trust.

ANSWER:  They admit paragraph 7.

8.  Defendant Hope Geldes is a resident of Oak Park, Illinois

ANSWER:  They admit paragraph 8.

9.  Ms. Geldes is licensed to practice law in Illinois.

ANSWER:  They admit paragraph 9.

10.  The real property that is part of the subject matter of this suit is located at 505 N. Lake Shore Drive, Chicago, Illinois.

ANSWER:  They admit paragraph 10.

11.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, in that the amount in controversy exceeds $75,000 and no plaintiff is a resident of the same state as any defendant.

ANSWER:  They admit paragraph 11.

12.   Venue in this Court is proper under 28 U.S.C. §1391 in that all defendants reside within the Northern District of Illinois.

ANSWER:  They admit paragraph 12.

13.   On or about July 1, 2006, Donald Hedstrom determined to purchase two condominium units located in the Lake Point Tower building at 505 N. Lake Shore Drive, Chicago, Illinois.

ANSWER:  They admit paragraph 13 and affirmatively state that Mr. Hedstrom intended to purchase these properties to give to Ms. Kotter and the Kotter Family Trust, that he was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

14.   Mr. Hedstrom intended to take title jointly with his former wife, Ms. Cherie Kotter, and to have the use and enjoyment of both two condominium units during his lifetime.

ANSWER:  They deny paragraph 14, except they admit that Mr. Hedstrom intended to have the use and enjoyment of unit 4705 during his lifetime.  They affirmatively state that Mr. Hedstrom intended to give this property to Ms. Kotter and the Kotter Family Trust, that he was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

15.   Mr. Hedstrom further intended to retain an ownership interest in each of the two Lake Point Tower condominium units and specifically provided for such an interest to pass to his estate upon his death and pursuant to his last will and testament.

ANSWER:  They deny paragraph 15.

16.   On July 13, 2006, Donald Hedstrom entered into a contract with Ricardo Manera to purchase a condominium known as "unit 4705" in the Lake Point Towers building at 505 North Lake Shore Drive, Chicago, Illinois.  A true and accurate copy of the

4

sales contract for this transaction is attached hereto as Exhibit 2.

ANSWER:  They admit paragraph 16.

17.  Ms. Cherie Kotter worked as Mr. Hedstrom's broker for the purchase of unit 4705.

ANSWER:  They admit paragraph 17.

18.  On July 26, 2006, attorney Hope Geldes agreed to act as Mr. Hedstrom's attorney in connection with the purchase of unit 4705.  A true and accurate copy of the letter confirming Ms. Geldes' engagement is attached hereto as Exhibit 3.

ANSWER:  They admit paragraph 18.

19.  Mr. Hedstrom provided more that $600,000 for the purchase and payment of buyer's fees for unit 4705.

ANSWER:  They admit paragraph 19.

20.  Ms. Geldes' July 26, 2006, letter did not disclose that she would represent or was representing any party in connection with the purchase of unit 4705 other than Mr. Hedstrom.

ANSWER:  They deny paragraph 20 as improper pleading and affirmatively state that Exhibit 3 speaks for itself.

21.  Although requested by the Estate through Ms. Ball and Witteried to provide all of her files for the unit 4705 transaction to the Estate's attorneys, Ms. Geldes provided no documentation of any communication in which she disclosed to Mr.

Hedstrom that she was presenting or would represent any other party to that transaction.

ANSWER: They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 21 and, as a result, deny it.

22. In exchange for her representation of Mr. Hedstrom with respect to the purchase of unit 4705, Ms. Geldes accepted a fee from Mr. Hedstrom.

ANSWER: They admit paragraph 22.

23. Ms. Geldes represented other parties in the purchase of unit 4705 but, on information and belief, never disclosed these relationships or the possible conflicts of interest resulting from them to Mr. Hedstrom.

ANSWER: They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 23 and, as a result, deny it.

24. On July 31, 2006, Ms. Geldes received an email from Mr. Hedstrom directing her to structure the purchase of unit 4705 and another condo unit 505 North Lake Shore Drive ("unit 1518") so that Mr. Hedstrom and Ms. Geldes would own each unit "jointly." A true and accurate copy of this email is attached hereto as Exhibit 4.

ANSWER: They admit that Exhibit 4 is a true and accurate copy of the July 31, 2006 email and otherwise deny the paragraph

as improper pleading and affirmatively state that Exhibit 4
speaks for itself.

25.  At 10:04 a.m. on August 1, 2006, Ms. Geldes sent an
email to Mr. Hedstrom and Ms. Kotter in which Ms. Geldes
indicated that she wanted to speak with Mr. Hedstrom to clarify
under which of the various forms of "joint ownership" Mr.
Hedstrom intended to take title to unit 4705 and unit 1518.  A
true and accurate copy of this email is attached here to as
Exhibit 5.

ANSWER:  They admit that Exhibit 5 is a true and accurate
copy of the August 1, 2006 email and otherwise deny paragraph
25.

26.  Less than one-half hour later, at 10:31 a.m. on August
1, 2006, Ms. Kotter emailed a response to Ms. Geldes' email but
did not send a copy of her response to Mr. Hedstrom.  A true and
accurate copy of this email is attached here to as Exhibit 6.

ANSWER:  They admit that Exhibit 6 is a true and accurate
copy of Ms. Kotter's August 1, 2006 email and otherwise deny
paragraph 26 and affirmatively state that the email was sent at
Mr. Hedstrom's direction and with his knowledge.

27.  Ms. Geldes provided the files she maintained during
her representation of Donald Hedstrom in the purchase of real
estate at 505 N. Lake Shore Drive to the Estate.  These files
disclose no communications in which Ms. Geldes informed Mr.

Hedstrom of the ramifications of the various forms of "joint ownership" under which Mr. Hedstrom could take title of the two units.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 27.

28.  Through her August 1, 2006 email, Ms. Kotter directed Ms. Geldes to place title to the 4705 unit with herself and Mr. Hedstrom as "joint tenants with right of survivorship."

ANSWER:  They deny paragraph 28 and affirmatively state that the August 1, 2006 email was sent at Mr. Hedstrom's direction and with his knowledge.

29.  Unit 4705 was transferred to Mr. Hedstrom and Ms. Geldes as joint tenants with right of survivorship in August 2006.

ANSWER:  They deny paragraph 29 and affirmatively state that unit 4705 was transferred to Mr. Hedstrom and Ms. Kotter as joint tenants with right of survivorship in August 2006, that Mr. Hedstrom was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

30.  Ms. Kotter took a broker's commission on the purchase of unit 4705.

ANSWER:  They admit paragraph 30.

31.  Ms. Kotter transferred the title of unit 4705 to Larry Peckler via a warranty recorded October 5, 2007.

ANSWER:  They admit paragraph 31.

32.  Ms. Kotter served as the broker for the purchase of unit 1518.

ANSWER:  They admit paragraph 32.

33.  Ms. Geldes represented Mr. Hedstrom in the purchase of unit 1518.

ANSWER:  They admit paragraph 33.

34.  Ms. Geldes represented both Mr. Hedstrom and Ms. Kotter with respect to the purchase of unit 1518.

ANSWER:  They deny paragraph 34.

35.  Mr. Hedstrom paid all of Ms. Geldes' fees with respect to the purchase of unit 1518.

ANSWER:  They admit paragraph 35.

36.  Mr. Hedstrom provided the purchase money and paid the buyer's fees for the purchase of unit 1518.

ANSWER:  They admit paragraph 36.

37.  Although Mr. Hedstrom intended to take title to unit 1518, he received no legal interest in unit 1518.

ANSWER:  They deny paragraph 37.

38.   Title was registered to "the Kotter family trust" at the direction of Ms. Kotter and Ms. Geldes.

ANSWER:  They deny paragraph 38 and affirmatively state that title was placed in the Kotter Family Trust at the direction of Mr. Hedstrom, that Mr. Hedstrom was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

<u>COUNT I</u>

39.   Plaintiffs reallege paragraphs 1 to 38 as though fully set forth herein.

ANSWER:  These defendants adopt their answers to paragraphs 1 to 38 as part of their answer to Count I.

40.   Ms. Kotter was engaged as a professional real estate broker with respect to unit 4705 and unit 1518.

ANSWER:  They admit paragraph 40.

41.   Ms. Kotter charged a brokers' commission for her services with respect to unit 4705 and unit 1518.

ANSWER:  They admit paragraph 41.

42.   Ms. Kotter had a fiduciary duty to represent the interests of her client, Mr. Hedstrom, to the exclusion of her own personal interest.

ANSWER:  They admit paragraph 42.

43.  Ms. Kotter breached her fiduciary duties to Mr. Hedstrom by using her position as a broker to take title of unit 4705 in a way that would divest Mr. Hedstrom and his estate of any legal interest in the property upon his death.

ANSWER:  They deny paragraph 43.

44.  Ms. Kotter breached her fiduciary duties to Mr. Hedstrom by using her position as broker to take title to unit 1518 in the name of the Kotter family trust.

ANSWER:  They deny paragraph 44.

45.  As a result of Ms. Kotter's breaches of fiduciary duties, she deprived the estate of Donald Hedstrom of a legal interest in real property worth more than $1 million, which was purchased solely with funds belonging to Donald Hedstrom.

ANSWER:  They deny paragraph 45.

46.  As a result of Ms. Kotter's breaches of fiduciary duties, Mr. Hedstrom understood that his estate would retain a legal interest in unit 4705 upon his death.

ANSWER:  They deny paragraph 46.

WHEREFORE, defendants Cherie Kotter and the Kotter Family Trust demand trial by jury, judgment in their favor and against plaintiffs Susan Ball and Jan Wittereied, administrators of the estate of Donald Hedstrom, the cost of this action, and all other appropriate relief.

COUNT II

47.  Plaintiffs reallege paragraphs 1 to 49 as though fully set forth herein.

ANSWER:  They adopt their answers to paragraphs 1 to 46 as part of their answer to Count II.

48.  Ms. Geldes served as Mr. Hedstrom's attorney with respect to the purchase of unit 4705 and unit 1518.

ANSWER:  They admit paragraph 48.

49.  Ms. Geldes also represented other parties to the purchase of unit 4705 and unit 1518.

ANSWER:  They lack information or knowledge to determine the truth of paragraph 49 and, as a result, deny it.

50.  Based on the lack of any documentation in Ms. Geldes' files for the unit 4705 and unit 1518, transactions of any communication disclosing her representation of other parties to the purchase of these units, plaintiffs are informed and believe that Ms. Geldes failed to disclose these relationships to Mr. Heldstrom.

ANSWER:  They lack information or knowledge to determine the truth of paragraph 50 and, as a result, deny it.

51.  Ms. Geldes had a duty to represent the interests of Mr. Hedstrom with respect to the purchase of unit 4705 and unit 1518.

ANSWER:  They admit paragraph 51.

52.  Ms. Geldes knew or should have known that Mr. Hedstrom's interests could be affected by the form in which he took title to units 4705 and 1518.

ANSWER:  They admit paragraph 52.

53.  A reasonable attorney in Ms. Geldes' position would have recognized that Ms. Kotter's direction to place title in unit 4705 as "joint tenants with right of survivorship," given without apparent notice to Mr. Hedstrom, placed the interests of Mr. Hedstrom and Ms. Kotter in direct conflict.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 53 and, as a result, deny it and affirmatively state that Mr. Hedstrom was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

54.  Ms. Geldes had a duty either to disclose a conflict of interest between her clients with respect to the purchase of unit 4705 or to withdraw her representation as to both clients.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 54 and, as a result, deny it.

55.  A reasonable real estate attorney in Ms. Geldes'
position would have recognized that Ms. Kotter's direction to
place title in unit 1518 in her own name placed in the interests
of Mr. Hedstrom and Ms. Kotter in direct conflict.

ANSWER:  They lack information or knowledge sufficient to
form a belief concerning the truth of paragraph 55 and, as a
result, deny it.

56.  Ms. Geldes had a duty either to disclose the conflict
of interest between her clients with respect to the purchase of
unit 1518 or to withdraw her representation as to both clients.

ANSWER:  They lack information or knowledge sufficient to
form a belief concerning the truth of paragraph 56 and, as a
result, deny it.

57.  Ms. Geldes accepted Ms. Kotter's directions with
respect to unit 4705 and unit 1518.

ANSWER:  They deny paragraph 57.

58.  Based on the lack of any documentation in Ms. Geldes'
files regarding the unit 4705 and unit 1518 transactions of any
communication disclosing her representation of other parties to
the purchase of these units, plaintiffs are informed and believe
that Ms. Geldes never disclosed the legal effect of Ms. Kotter's
directions with respect to the manner in which title in those
units was to be held to Mr. Hedstrom.

ANSWER:  They deny paragraph 58 and affirmatively state that Mr. Hedstrom was sophisticated in real estate matters, that he knew and understood the legal consequences of deeding properties in Illinois and elsewhere, that he personally reviewed and approved all real estate documents concerning the property at issue, and that he attended the closings of the property at issue.

59.  As a result of Ms. Geldes' actions and omissions, Mr. Hedstrom understood that his estate would retain a legal interest in unit 4705 upon his death.

ANSWER:  They deny paragraph 59.

60.  A reasonable attorney in Ms. Geldes' position would have recognized that there is a legal presumption of fraud when a person serves as a broker with respect to a real estate transaction and also takes title to the property.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 60 and, as a result, deny it.

61.  A reasonable attorney in Ms. Geldes' position would have either informed Mr. Hedstrom about the presumption of fraud arising from the nature of the purchase arrangements for unit 4705 or 1518, or withdrawn as counsel.

ANSWER:  They lack information or knowledge sufficient to form a belief concerning the truth of paragraph 61 and, as a result, deny it.

62.  As a result of Ms. Geldes' actions and omissions, Ms. Geldes permitted Mr. Hedstrom to be deprived of any interest in two parcels of real property in which he intended to retain an ownership interest, and for which he paid more than $1 milion in aggregate.

ANSWER:  They deny paragraph 62.


                                    s/Gregory A. Adamski
                                    Attorney for Certain
                                    Defendants


Gregory A. Adamski
Adamski & Conti
100 N. LaSalle Street
Chicago, Illinois 60602
312.332-7800

16