IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Susan Ball, and Jan Witteried, Administrators of the Estate of Donald Hedstrom, )<br><br>Plaintiff, )<br><br>v. )<br><br>Cherie Kotter, the Kotter Family Trust, and Hope Geldes, )<br><br>Defendants. ) | NO.  08 C 1613<br>The Hon. Robert Dow, Jr.<br>The Hon. Maria Valdez |

## PLAINTIFF'S FED. R. CIV. P. RULE 26(a) DISCLOSURES

Plaintiff, by its attorneys and pursuant to Fed. R. Civ. P. Rule 26(a)(1), hereby submits its Initial Disclosures to Defendants.

These disclosures represent plaintiff's good-faith attempt to comply with the requirements of Rule 26(a)(1).  Neither plaintiffs nor defendants have been served with formal discovery requests, and plaintiffs may become aware of additional information, witnesses or documents relevant to the known issues in this case as discovery progresses.  Plaintiff may also become aware of additional issues bearing upon the relevance of currently known information, witnesses and documents.  Accordingly, plaintiff reserves the right to supplement these disclosures as discovery progresses in this case to the extent permissible and consistent with its obligations under the Federal Rules of Civil Procedure.

## I.    Rule 26(a)(1)(A) Individuals

1.  Susan Ball and Jan Witteried

Ms. Ball and Ms. Witteried are the natural daughters of the decedent Donald Hedstrom and the duly appointed administrators of his estate.  They are in possession and control of the financial records of the estate.

Ms. Ball and Ms. Witteried may be contacted through counsel.

2.  Lawyer's Title Insurance Company

The Lawyer's Title Insurance Company acted as the settlement agent with regard to the purchase of the 4705 unit.  It is believed to maintain offices at 10 S. LaSalle, #2500, Chicago, IL 60603.

3.  Arelia Alonzo

Arelia Alonzo acted as an employee of the Lawyer's Title Insurance Company with regard to the purchase of the 4705 unit.  Plaintiff believes that she may be contacted through the Lawyer's Title Insurance Company offices.

4.  Ricarchito Manera

Richarito Manera was the former owner of the 4705 unit, and is believed to have attended the closing.  Mr. Manera is believed to maintain an address at 505 N Lake Shore Dr, Apt 4710, Chicago, IL 60611-3621 and a phone number (312) 955-0362.

5.  The Habitat Company

The Habitat Company is believed to have received a broker's commission on the purchase of the 4705 unit.  The Habitat Company is believed to maintain

offices at 350 West Hubbard Street, Chicago, IL 60610, with a working telephone number at 312-527-5400.

6.  Magnificent Mile Real Estate

Magnificent Mile Real Estate is believed to have received a broker's commission on the purchase of the 4705 unit.

7.  Ms. Cherie Kotter

Ms. Kotter acted as a broker on behalf of Mr. Hedstrom with respect to the purchase of both condo units.  She is believed to have been acting as an employee of or an independent contractor for the Habitat Company or Magnificent Mile Real Estate with respect to the purchase of the 4705 unit.

8.  Ms. Hope Geldes

Ms. Geldes acted as an attorney on behalf of Mr. Hedstrom with respect to the purchase of both condo units.

9.  Catherine Hwa

Ms. Hwa acted as an attorney for the seller with respect to the purchase of the 4705 unit.

10.  Unknown Brokers or Agents.

Unknown brokers and agents may have been involved with or attended the closing of the 4705 or 1518 units.

II.    **Rule 26(a)(1)(B) Documents**

1.  Attached Will and Living Trust of Donald Hedstrom

2.  Financial Records of Donald Hedstrom

Plaintiff possesses the financial records of the decedent Donald Hedstrom pertinent to the purchase of each condominium unit. Such records are available for production or inspection upon request.

3. Communications from Cherie Kotter and Hope Geldes

Plaintiff possesses certain communications made by Ms. Kotter and Ms. Geldes to the estate and its representatives. Although plaintiff believes defendants have retained copies of these materials, copies of these records are available for production or inspection upon request.

4. Publicly Available Information Concerning the 1518 and 4705 Units

Plaintiff possesses of publicly available records from the Cook County Recorder's office regarding the purchase of the 1518 and 4705 units. Copies of these records are available for production or inspection upon request.

5. E-Mail Account of Donald Hedstrom

Plaintiff has access to an e-mail account maintained by the decedent Donald Hedstrom during his lifetime. Plaintiff is willing upon request to arrange for production or inspection of the e-mail account in a manner that will not alter the contents of the account.

III. **Damages**

Plaintiff damages are equal to the purchase price of the underlying condo units plus the broker's and attorney's fees paid by the estate in connection with the purchase of those units, together with the appropriate interest on those sums. Plaintiff believes the purchase price and fees incurred are disclosed on the Housing and Urban

Development statement prepared for the closing of each condominium unit, copies of which Defendants already possess.

Dated: July 14, 2008

Respectfully submitted,

Jeremy Schulze

One of the Attorneys for Plaintiff Estate of Donald Hedstrom

Jan Michaels
Neal Thompson
Jeremy Schulze
Michaels & May, PC
300 S. Wacker Drive
18th Floor
Chicago, Illinois 60606
Telephone (312) 428-4726
Facsimile (312) 575-8679

# WILL

## OF

### DONALD C. HEDSTROM

I, DONALD C. HEDSTROM, residing at 1340 Jewel Box Avenue, Naples, Florida 34102, make this Will, and revoke all other Wills and Codicils previously made by me.

### ARTICLE I. TANGIBLE PERSONAL PROPERTY

A.    I give and devise certain items of my tangible personal property to the persons named in my last signed and dated writing in existence at my death which describes the items and devisees therein with reasonable certainty. If no writing is found and properly identified by my Personal Representative within thirty (30) days after my Personal Representative's qualification, it shall be presumed that there is no writing and any subsequently discovered writing shall be ignored.

B.    I give and devise the furniture and furnishings in my houses to the persons to whom such house is devised.

C.    I give and devise any automobile I own at my death, to my surviving daughters, SUSAN L. BALL and JAN K. WITTERIED.

D.    I direct that any expense incurred in safeguarding or delivering such property shall be paid from my estate or my trust as an expense of the administration thereof.

### ARTICLE II.  OTHER PROPERTY

At my death, I give and devise my other property as follows:

A.    My principal residence, currently located at 1340 Jewel Box Avenue, Naples, Florida, shall be distributed in equal shares to my daughters, SUSAN L. BALL and JAN K. WITTERIED, as tenants in common.  Included in this gift is all of the furniture and furnishings contained in my residence, the 1989 Egg Harbor 41-foot convertible boat and the two Seadoos that are maintained at my residence.  If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

B.    My interest in the Airport I-75 Land Trust, dated November 12, 1999, shall be distributed to CHERIE KOTTER, if living.  If CHERIE KOTTER predeceases me, then my interest in the Airport I-75 Land Trust shall be distributed to my son, MARK D. HEDSTROM, if living and if not to his living issue, per stirpes.

C.    My interest in Lot 36, Section 1, of the Foxridge Estates, Knox County, Indiana, shall be distributed to CHERIE KOTTER, if living.  If CHERIE KOTTER predeceases me, then my interest in Lot 36, Section 1, of the Foxridge Estates shall be

distributed to my daughter, JAN K. WITTERIED, if living and if not to her living issue, per stirpes.

D.  My seasonal residence, located at 2649 Atlantic Highway 1, Lincolnville, Maine, consisting of approximately five acres (Lot 016-074) shall be distributed in equal shares to my daughters, SUSAN L. BALL and JAN K. WITTERIED, as tenants in common.  Included in this gift is all of the furniture and furnishings contained in my residence.  If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

E.  My interest in Ocean Falls Estates, LLC, which owns certain property located in Lincolnville, Maine, shall be distributed to my son MARK D. HEDSTROM, if living and if not to his living issue, per stirpes.

F.  Presently, I am the holder of certain monetary obligations owed to me by one or more of the following individuals/entities: Gerhardt Hess, Coast Resources Ltd. and Petro-Hess Ltd. Inc.  I will hereinafter refer to these debts as the "HESS INDEBTEDNESS."  The HESS INDEBTEDNESS shall be distributed in equal shares to my children, MARK D. HEDSTROM, SUSAN L. BALL and JAN K. WITTERIED, if living. If any of my children predeceases me, his or her share shall be distributed to such child's living issue, per stirpes.  This devise is subject to the conditions set forth in "ARTICLE VI, K" of the Living Trust which I restated this date concurrently with the execution of this Will.

- 3 -

G.    My interest in Oxton Farms LLC shall be distributed in equal shares to my daughters, JAN K. WITTERIED and SUSAN L. BALL. If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

H.    My interest in a certain oil well known as the Garfield I-30 Well, located in Michigan, shall be distributed in equal shares to my children, MARK D. HEDSTROM, JAN K. WITTERIED and SUSAN L. BALL, as tenants in common. If any of my children predeceases me, his or her share shall be distributed to such child's living issue, per stirpes. This devise is subject to the conditions set forth in "ARTICLE VI, K" of the Living Trust which I restated this date concurrently with the execution of this Will.

I.    My condominium located at Unit No. 4705, Lake Point Towers, 505 North Lake Shore Drive, Chicago, Illinois 60611, shall be sold by either my Personal Representative or the Trustee under the Living Trust which I restated this date concurrently with the execution of this Will. The proceeds from the sale of my Chicago condominium shall be added to the trust estate to be held, administered and distributed pursuant to the terms thereof as in effect at my death.

### ARTICLE III. RESIDUE

A.    All the residue of my estate, I give and devise to the then acting Trustee under the Living Trust which I restated this date concurrently with the execution of

this Will, as the same may be amended or restated, to be added to the trust estate and to be held, administered and distributed pursuant to the terms thereof as in effect at my death.

B.    If for any reason the aforesaid trust is not in existence at the time of my death, I give and devise the residue of my estate to the Trustee named in the trust to be held and disposed of by such Trustee in accordance with the terms of the aforesaid trust as amended and restated as of the execution of this Will, as if it had been set forth in full herein and to that extent I hereby incorporate said trust by reference into my Will.

## ARTICLE IV. SURVIVORSHIP

If any person dies under circumstances such that the order of our deaths cannot be determined, such person shall be deemed to have predeceased me.

## ARTICLE V. APPORTIONMENT OF TAXES

My Personal Representative shall not pay funeral expenses, claims and costs of administration as they have been otherwise provided for, or I have directed their payment under the Living Trust previously mentioned and I hereby confirm that direction.

My Personal Representative shall not pay estate and inheritance taxes assessed by reason of my death from the assets passing under this Will. Such taxes shall be paid by the applicable party in accordance with directions found in such Living Trust previously mentioned.

My Personal Representative shall make such elections under the tax laws as my Personal Representative deems advisable without regard to the relative interests of the beneficiaries. In that regard, I authorize my Personal Representative to exercise the elections and options stated in my aforesaid trust with respect to the generation skipping tax, and specifically, I authorize my Personal Representative, in exercising discretion, to allocate any portion of my exemption under Section 2631(a) of the Internal Revenue Code of 1986, as amended, to any property as to which I am the transferor, including any property transferred by me during life as to which I did not make an allocation prior to my death.

No adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for the effect of elections under the tax laws made by my Personal Representative or by the Trustee of the trust previously mentioned.

### ARTICLE VI. FIDUCIARY POWERS

I give my Personal Representative the fullest power and authority to do all acts and to make all decisions which I could do or make if living. In addition to the powers granted under Florida law, my Personal Representative is specifically authorized to sell and convey any real or personal property I may own at the time of my death, for such prices and on such terms as my Personal Representative shall deem advisable, without obtaining prior court approval.

### ARTICLE VII.  ADMINISTRATIVE PROVISIONS

The following administrative provisions shall be applicable in the administration of my estate:

A.    AGENTS:  My Personal Representative may employ and pay the compensation of accountants, attorneys, custodians, investment counsel, corporate fiduciaries (acting in agency relationships) and other agents.  The compensation of professionals who are engaged to perform services as directed herein or as may be authorized or implicit by the terms hereof shall be reasonable in accordance with prevailing community standards and applicable law.

B.    INSTRUCTIONS:  If I have left written instructions with respect to my funeral or the disposition of my final remains, I authorize and direct my Personal Representative to carry out such instructions.

### ARTICLE VIII. INTERPRETATIVE PROVISIONS:

A.    I am not married.  I have four children and their names are as follows: MARK D. HEDSTROM, GREG P. HEDSTROM, SUSAN L. BALL and JAN K. WITTERIED.  I was formerly married to CHERIE KOTTER, who remains my good friend and companion.

B.    When necessary or appropriate to the meaning, words referring to either gender shall include both, singular and plural shall be interchangeable, words referring to descent shall include natural and adopted issue (but shall not include

"stepchildren" who are not adopted). Any reference herein to "the Code" refers to the Internal Revenue Code of 1986, as amended.

    C.    Captions are used to facilitate the reading of this Will and are not intended to be used for construction purposes.

### ARTICLE IX. PERSONAL REPRESENTATIVE

    I designate my daughters, SUSAN L. BALL and JAN K. WITTERIED, to be the Personal Representatives of my estate, without bond.  If SUSAN or JAN do not survive me, fail to qualify or cease to act as Personal Representative, I designate CHERIE KOTTER to serve along with my daughter, as Personal Representative of my estate.  If CHERIE is unable or unwilling to serve, then I designate my son, MARK D. HEDSTROM, to serve along with my daughter, as Personal Representative of my estate, without bond.

    IN WITNESS WHEREOF, I have signed this Will, this _15th_ day of _November_, in the year Two Thousand Six.

_Donald C. Hedstrom_
DONALD C. HEDSTROM

    We certify that the above instrument was on the date hereof signed and declared by DONALD C. HEDSTROM, as DONALD C. HEDSTROM's Will in our presence and that we, in DONALD C. HEDSTROM's presence and in the presence of each other have signed

our names as witnesses thereto, believing **DONALD C. HEDSTROM** to be of sound mind at the

time of signing.

_Cynthia R. Jones_
(Signature)
_Cynthia R. Jones_
(Printed Name)
_RR#3, Box 5_
(Address)
_Sumner, IL 62466_

_Jeffrey B. Kolb_
(Signature)
_Jeffrey B. Kolb_
(Printed Name)
_1232 Audubon Rd._
(Address)
_Vincennes, IN 47591_

STATE OF _INDIANA_
COUNTY OF _KNOX_

I, **DONALD C. HEDSTROM**, declare and acknowledge to the officer taking my acknowledgement of this instrument, and to the subscribing witnesses, that I signed this instrument as my Will.

_Donald C Hedstrom_

**DONALD C. HEDSTROM**

We, _Cynthia R. Jones_ and _Jeffrey B. Kolb_ , have been sworn by the officer signing below, and declare to that officer on our oaths that the Testator declared the instrument to be the Testator's Will and signed it in our presence and that we each signed the instrument as a witness in the presence of the Testator and of each other.

_Cynthia R. Jones_                    _Jeffrey B. Kolb_
Witness                              Witness

Acknowledged and subscribed before me by the Testator, **DONALD C. HEDSTROM**,

☒ personally known, or
☐ produced _____ as identification

and sworn to and subscribed before me by the witnesses,

_Cynthia R. Jones_                    _Jeffrey B. Kolb_

☒ personally known, or               ☒ personally known, or

☐ produced _____            ☐ produced _____
   as identification                     as identification

and subscribed by me in the presence of the Testator and the subscribing witnesses, all of this _15th_ day of _November_ , 2006.

_Susan M. Wittmer_
Notary Public _residing in Daviess County, IN_
Printed Name: _Susan M. Wittmer_
My Commission Expires: _12-13-09_

- 10 -

# *DONALD C. HEDSTROM*
# *RESTATEMENT OF LIVING TRUST*

*Prepared By:*
HARTER, SECREST & EMERY LLP
Attorneys at Law

Pelican Bay Corporate Center
5551 Ridgewood Drive, Suite 405
Naples, Florida 34108-2719
Telephone: 239-598-4444
Fax Number: 239-598-2781

# DONALD C. HEDSTROM RESTATEMENT OF LIVING TRUST

I, DONALD C. HEDSTROM, residing at 1340 Jewel Box Avenue, Naples, Florida 34102, having previously established a certain Living Trust dated December 8, 2005, with myself as Trustee, having transferred certain assets into that Trust which I declare that I hold as Trustee thereof, and now being desirous of amending and restating said Trust in its entirety, pursuant to my retained power in "ARTICLE XV" to amend said Trust, do hereby restate such Trust in its entirety on this _15th_ day of _November_, 2006, as follows:

## ARTICLE I. NAME OF TRUST AND FAMILY MEMBERS

This Trust shall be known as the "DONALD C. HEDSTROM LIVING TRUST DATED DECEMBER 8, 2005, AS AMENDED AND RESTATED." I am not married. I have four children and their names are as follows: MARK D. HEDSTROM, GREG P. HEDSTROM, SUSAN L. BALL and JAN K. WITTERIED. Although I am not married, my former wife, CHERIE KOTTER, remains my good friend and companion and is a beneficiary of this Living Trust.

## ARTICLE II. DURING MY LIFETIME

A. INCOME AND PRINCIPAL: During my lifetime the Trustee shall pay the income from the trust estate in convenient installments to me or otherwise as I may from time to time direct, and also such sums from principal as I may request at any time.

B. DISABILITY:   If at any time or times I shall be unable to direct the management of the trust, the Trustee may use such sums from the income and principal of the trust estate as the Trustee deems necessary or advisable for my care, support and comfort, or for any other purpose the Trustee considers to be for my best interest, adding to principal any income not so used.

C. DETERMINATION OF DISABILITY: I shall be considered to be unable to direct the management of the trust if unable to give prompt and intelligent consideration to financial matters, by reason of illness or mental or physical disability.   The determination as to my inability at any time shall be made by a majority of my four children, with the advice of my physician, and the Trustee may rely upon written notice of that determination.

### ARTICLE III.  PAYMENT OF EXPENSES AND TAXES AT DEATH

A. PAYMENT OF EXPENSES:  Upon my death, the Trustee shall pay from the principal of the trust estate all expenses of my last illness and funeral, costs of administration including ancillary, and costs of safeguarding and delivering devises and claims allowable against my estate.

B. PAYMENT OF TAXES: The Trustee shall pay all taxes assessed by reason of my death first, in accordance with the provisions set forth in ARTICLE "VI," "K" of this Instrument; and if the funds available pursuant to such provision are exhausted, then in accordance with the Florida tax apportionment statute then in effect.

2

The Trustee may make payment directly, or to my Personal Representative, as the Trustee deems advisable. I hereby waive all rights to reimbursement for any payments made pursuant to this article.

C. SUCCEEDING ARTICLES: The succeeding articles of this Instrument shall be subject to the Trustee making or providing for the forgoing payments.

### ARTICLE IV.  CHARITABLE LEGACY

At my death, the Trustee shall pay $50,000 to VINCENNES UNIVERSITY, located in Vincennes, Indiana, for its general purposes.

### ARTICLE V.  LEGACIES TO MY NEPHEW AND NIECES

At my death, the Trustee shall pay the following legacies as soon as practicable:

A. $10,000 to my niece, KATHY GARRETT, who presently resides at 370 Chaparral Lane, Arroyo Grande, California 93420. If KATHY has predeceased me, this gift shall lapse.

B. $10,000 to my niece, KAREN JAECKELS, who presently resides at 1309 Morgan Trail, Santa Maria, California 93455. If KAREN has predeceased me, this gift shall lapse.

C. $10,000 to my nephew, KEVIN COWEN, who presently resides at 15430 Avenida Rorras, San Diego, California 92128. If KEVIN has predeceased me, this gift shall lapse.

3

## ARTICLE VI. DISPOSITION OF BALANCE OF TRUST

At my death, the Trustee shall distribute the balance of the trust in accordance with the terms of this article. If any of the assets listed below are not held in my Trust at the time of my death, and are owned by me individually, I direct the Personal Representative of my Estate to distribute the following property in accordance with the terms of this article of my Living Trust:

A. My principal residence, currently located at 1340 Jewel Box Avenue, Naples, Florida, shall be distributed in equal shares to my daughters, SUSAN L. BALL and JAN K. WITTERIED, as tenants in common. Included in this gift is all of the furniture and furnishings contained in my residence, the 1989 Egg Harbor 41-foot convertible boat and the two Seadoos that are maintained at my residence. If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

B. My interest in the Airport I-75 Land Trust, dated November 12, 1999, shall be distributed to CHERIE KOTTER, if living. If CHERIE KOTTER predeceases me, then my interest in the Airport I-75 Land Trust shall be distributed to my son, MARK D. HEDSTROM, if living and if not to his living issue, per stirpes.

C. My interest in Lot 36, Section 1, of the Foxridge Estates, Knox County, Indiana, shall be distributed to CHERIE KOTTER, if living. If CHERIE KOTTER predeceases me, then my interest in Lot 36, Section 1, of the Foxridge Estates shall be

4

distributed to my daughter, JAN K. WITTERIED, if living and if not to her living issue, per stirpes.

D. My seasonal residence, located at 2649 Atlantic Highway 1, Lincolnville, Maine, consisting of approximately five acres (Lot 016-074) shall be distributed in equal shares to my daughters, SUSAN L. BALL and JAN K. WITTERIED, as tenants in common. Included in this gift is all of the furniture and furnishings contained in my residence. If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

E. My interest in Ocean Falls Estates, LLC, which owns certain property located in Lincolnville, Maine, shall be distributed to my son MARK D. HEDSTROM, if living and if not to his living issue, per stirpes.

F. Presently, I am the holder of certain monetary obligations owed to me by one or more of the following individuals/entities: Gerhardt Hess, Coast Resources Ltd. and Petro-Hess Ltd. Inc. I will hereinafter refer to these debts as the "HESS INDEBTEDNESS." The HESS INDEBTEDNESS shall be distributed in equal shares to my children, MARK D. HEDSTROM, SUSAN L. BALL and JAN K. WITTERIED, if living. If any of my children predeceases me, his or her share shall be distributed to such child's living issue, per stirpes. This gift is subject to the condition set forth in "ARTICLE VI, K" of this Instrument.

5

G. My interest in Oxton Farms LLC shall be distributed in equal shares to my daughters, **JAN K. WITTERIED** and **SUSAN L. BALL**. If either daughter predeceases me, such daughter's share shall be distributed to her living issue, per stirpes.

H. My interest in a certain oil well known as the Garfield I-30 Well, located in Michigan, shall be distributed in equal shares to my children, **MARK D. HEDSTROM, JAN K. WITTERIED** and **SUSAN L. BALL**, as tenants in common. If any of my children predeceases me, his or her share shall be distributed to such child's living issue, per stirpes. This gift is subject to the condition set forth in "ARTICLE VI, K" of this Instrument.

I. My condominium located at Unit No. 4705, Lake Point Towers, 505 North Lake Shore Drive, Chicago, Illinois 60611, shall be sold by my Trustee. The proceeds from the sale of my Chicago condominium shall pass to the residue of the trust estate in accordance with the next paragraph of this Instrument.

J. The remaining balance of the trust assets not otherwise specifically distributed pursuant to the foregoing subparagraphs of this article shall be distributed in equal shares to my children, **MARK D. HEDSTROM, GREG P. HEDSTROM, SUSAN L. BALL** and **JAN K. WITTERIED. GREG'S** share of this distribution, however, shall be held in trust pursuant to the terms of ARTICLE VII of this Instrument. If any of my children has predeceased me, his or her share shall be distributed to such child's living issue, per stirpes.

6

K.I have intentionally not made a specific distribution of my brokerage account which is currently held at MORGAN KEEGAN, which is associated with REGIONS BANK. It is my wish that this account be used to pay any estate or inheritance taxes that may be due by reason of my death. It is my further wish that this account be used as a source of funds to pay the legacies set forth in ARTICLES IV and V of this Living Trust, and also used to pay the costs and expenses incurred in the administration of my estate and this Living Trust. Should the funds in my brokerage account be insufficient to pay all taxes, legacies and estate administration expenses, my Trustee shall pay whatever additional amount that becomes due from the remaining Trust assets which have not been specifically distributed pursuant to the terms of this article of my Living Trust.

If there are still insufficient assets in my Trust to pay the taxes, legacies and expenses, I direct that my Trustee resort to the HESS INDEBTEDNESS (referred to in "ARTICLE VI, F" of this Instrument) as a source of liquidity to pay any remaining obligations. Any portion of the HESS INDEBTEDNESS not needed for the payment of taxes, legacies and expenses shall be distributed in accordance with the terms of "ARTICLE VI, F". If, after exhausting the HESS INDEBTEDNESS, there are still insufficient assets in my trust to pay taxes, legacies and expenses, I direct that my Trustee resort to the Garfield I-30 Well (referred to in "ARTICLE VI, H" of this Instrument) as a source of liquidity to pay any remaining obligations. Any portion of

the Garfield I-30 Well (or the proceeds from its sale) not needed for the payment of taxes, legacies and expenses shall be distributed in accordance with the terms of "ARTICLE VI, H."

L. If any of my children predecease me without living issue, his or her share shall be divided among my remaining issue, per stirpes. All of the distributions described in this article are subject to the POSTPONEMENT OF POSSESSION article of my Living Trust.

### ARTICLE VII. TRUST FOR GREG P. HEDSTROM

All distributions to my son, GREG P. HEDSTROM, under this Instrument shall be held by the Trustee in further trust for GREG'S benefit. The Trustee shall pay so much of the income and principal of this trust, from time to time, as my Trustee determines, in the Trustee's sole discretion, is reasonably required for GREG'S health, education and support. In exercising discretion, the Trustee shall consider any income and other resources available to GREG. Notwithstanding any contrary provisions, I specifically direct that the Trustee shall make no distribution of either income or principal to GREG if he is engaged in gambling or alcohol abuse. Further, under no circumstances shall any gambling debts be paid from this trust.

This trust for the benefit of my son GREG shall be a spendthrift trust. By that, I mean that his interest in this trust shall not be subject to the claims of any creditor, any

spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily transferred or encumbered.

At the time of GREG'S death, the Trustee shall distribute the balance of this trust to such one or more of GREG'S issue in such portions and in such manner (outright or in trust) as GREG may appoint by specific reference in his duly probated Will, or if he fails to effectively exercise his limited power of appointment, then as to the assets he has not appointed, the Trustee shall distribute them to his issue who are then living, per stirpes, or if none, to my then living issue, per stirpes.

If GREG predeceases me, this share shall be paid to GREG'S then living issue, per stirpes, subject to the POSTPONEMENT OF POSSESSION article of this Instrument.

### ARTICLE VIII.  POSTPONEMENT OF POSSESSION

If any property becomes payable outright to a beneficiary who is under the age of thirty years, it shall be held for such beneficiary by the Trustee, or paid to any person or trust company selected by the Trustee to act as Trustee, until such beneficiary attains the age of thirty years.  Any income or principal deemed necessary or advisable by the Trustee for the beneficiary's health, education or support may be paid to the beneficiary or applied on such beneficiary's behalf.  When such beneficiary attains the age of twenty-five years, such beneficiary shall have the right to withdraw one-half of the then market value of the trust; and when such beneficiary attains the age of thirty years, such beneficiary shall receive the

balance of the trust property. If the beneficiary dies before attaining the age of thirty years, any remaining balance of the trust property shall be paid to such beneficiary's estate.

### ARTICLE IX. SURVIVORSHIP PRESUMPTION

If any person dies under circumstances such that the order of our deaths cannot be determined, such person shall be deemed to have predeceased me.

### ARTICLE X. ADDITIONAL PROPERTY

I, or any other person, may transfer or devise property to the Trustee to be held under this Instrument and may designate the trust to which the property or proceeds shall be added. If the addition is made by Will, the Trustee shall accept the statement of the Personal Representative that the assets delivered constitute all of the property to which the trust is entitled, without inquiring into the Personal Representative's administration or accounting.

### ARTICLE XI. SUCCESSOR TRUSTEE AND ACCOUNTING

A. After my resignation as Trustee, my death or my disability, my daughters, SUSAN L. BALL and JAN K. WITTERIED, shall be the successor Trustees. If either SUSAN or JAN are unable or unwilling to serve, then CHERIE KOTTER shall also serve as successor Trustee. If CHERIE KOTTER is unable or unwilling to serve, then my son, MARK D. HEDSTROM, shall also serve as successor Trustee.

B. Any Trustee may resign at any time by written notice to me if living, otherwise to each beneficiary then entitled to receive or have the benefit of the income from the trust. In case of the resignation, refusal or inability to act of any

10

Trustee acting or appointed to act hereunder, I, if living, otherwise the beneficiary or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust, shall appoint another Trustee.

C. Every successor Trustee shall have all the powers given to the originally named Trustee. No Trustee shall be personally liable for any act or omission of any predecessor Trustee. With my approval if I am living, otherwise with the approval of the beneficiary or a majority in interest of the beneficiaries then entitled to receive or have the benefit of the income from the trust hereunder, a Trustee may accept the account rendered and the property received as a full and complete discharge to the predecessor Trustee without incurring any liability for so doing.

D. The parent or guardian of a beneficiary under disability shall receive notice and have authority to act for the beneficiary under this article.

E. No Trustee wherever acting shall be required to give bond or surety or be appointed by or account for administration of any trust to any court. This trust shall not be registered with any court.

F. The Trustee shall render an account of the receipts and disbursements and a statement of assets at least annually to me if living, otherwise to each adult beneficiary then entitled to receive or have the benefit of the income from the trust.

G. The Trustee shall be reimbursed for all reasonable expenses incurred in the management and protection of the trust.

11

### ARTICLE XII.  TRUSTEE POWERS

In addition to those powers conferred by law which are not inconsistent with the terms hereof, the Trustee shall hold, manage, care for and protect the trust property and shall have the authority to:

A. retain any property originally constituting the trust corpus or subsequently added thereto, although not of a type, quality or diversification considered proper for trust investments;

B. sell (at public or private sale, for cash or credit and with or without security), convey, mortgage, lease (for present or future periods and without regard to statutory restrictions on the term), manage, insure, repair, improve, alter and subdivide any real and personal property;

C. invest and reinvest in such securities, including common stocks, common trust funds, mutual funds (including any common trust fund or mutual fund maintained by a corporate Trustee herein or any of its affiliate organizations), mortgages, notes, bank deposits and other real and personal property, within or without the United States, as the Trustee deems proper without regard to diversification or those investments which are authorized by law for fiduciaries;

D. borrow money at interest rates then prevailing from any individual, bank or other source, whether or not the lender is then acting as a Trustee, and to create security interests in the trust property;

12

E. distribute income and principal in cash or in kind, or partly in each, allocate or distribute undivided interests or different assets or disproportionate interests in assets, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes; to value the trust property and to sell any part or all thereof in order to make allocation or distribution; no action taken by the Trustee pursuant to this paragraph shall be subject to question by any beneficiary;

F. exercise voting rights of securities, register securities in nominee name, execute proxies, grant options, join in any merger, reorganization or other plan affecting securities, exercise rights, options, and subscriptions;

G. pay all expenses and other charges for preservation, protection and delivery of personal property specifically distributed in kind;

H. compromise, contest, prosecute or abandon claims in favor of or against the trust;

I. hold separate trust shares as a common fund, dividing the income proportionately among them, assign undivided interests to the several trusts, and make joint investments of the funds belonging to them;

J. allocate receipts and expenditures between principal and income in accordance with the laws of the State of Florida;

K. buy, sell and trade in securities of any nature, including short sales on margin and for such purposes may maintain and operate margin accounts with brokers and may pledge any securities held or purchased by the Trustee with such brokers as security for loans and advances made by the Trustee;

L. perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges; and

M.    generally, exercise all the powers which an individual owner of the trust assets might have exercised if acting individually.

## ARTICLE XIII.  CLOSELY HELD BUSINESS INTERESTS

I may own interests in partnerships and what are commonly called "closely held" corporations or businesses at death and recognizes that the ownership of such interests will, or may, impose added burdens of administration and management upon the Trustee under this Instrument.  Without limiting the generality of any other powers or discretion conferred on the Trustee under this Instrument, I specifically grant the following powers to the Trustee to be exercised from time to time in the Trustee's discretion and without prior authority of any Court:

A. retain and continue to operate the business for such period as the Trustee may deem advisable;

14

B. control, direct and manage the business (in this connection the Trustee, in the Trustee's sole discretion, shall determine the manner and extent of the Trustee's active participation in the operation, and the Trustee may delegate all or any part of the Trustee's power to supervise and operate, to such person or persons as the Trustee may select, including any associate, partner, officer or employee of the business);

C. hire and discharge officers and employees, fix their compensation and define their duties; and similarly to employ, compensate and discharge agents, attorneys, consultants, accountants and such other representatives the Trustee may deem appropriate, including the right to employ any beneficiary in any of the foregoing capacities;

D. invest other trust funds in such business; pledge other assets of the trust as security for loans made to such business; and loan funds from the trust to such business;

E. organize corporations under the laws of this or any other state or country and transfer thereto all or any part of the business or other property held in the trust and receive in exchange therefor such stocks, bonds and other securities as the Trustee deems advisable;

F. take any action required to convert any corporation into a partnership or sole proprietorship;

15

G. treat the business as an entity separate from the trusts (in any accounting to the court or to any beneficiaries, the Trustee shall only be required to report the earnings and condition of the business in accordance with standard corporate accounting practice);

H. retain in the business such amount of the net earnings for working capital and other purposes of the business as the Trustee may deem advisable in conformity with sound business practice;

I. purchase, process and sell merchandise of every kind and description and purchase and sell machinery and equipment, furniture and fixtures and supplies of all kinds;

J. sell or liquidate all or any part of any business at such time and price upon such terms and conditions (including credit) and to such persons (including any partner, officer or employee of the business or to any beneficiary hereunder) as the Trustee may determine;

K. exercise any of the rights and powers herein conferred in conjunction with another or others; and

L. diminish, enlarge or change the scope or nature of any business.

It is agreed that certain risks are inherent in the operation of any business. Therefore, the Trustee shall not be held liable for any loss resulting from the retention and operation of any business unless such loss shall result directly from the Trustee's gross

16

negligence or willful misconduct. In determining any question of liability for losses, it should be considered that the Trustee is engaged in a speculative enterprise at my express request.

If any business operated by the Trustee pursuant to the authorization contained in this Instrument shall be unincorporated, then all liabilities arising therefrom shall be satisfied first from the business itself and second out of the trust estate. It is agreed that in no event shall any such liability be enforced against the Trustee personally. If the Trustee is held personally liable, the Trustee shall be entitled to indemnity first from the business and second from the trust estate.

### ARTICLE XIV. ADMINISTRATIVE PROVISIONS

The following administrative provisions shall be applicable in the administration of my Living Trust:

A. TAX ELECTIONS. Following my death, the Trustee, in consultation and cooperation with my Personal Representative, shall make such elections under the tax laws as the Trustee deems advisable without regard to the relative interests of the beneficiaries of this Instrument. Once such elections are made, no adjustment shall be made between principal and income or in the relative interests of the beneficiaries to compensate for the effect of such elections whether they are made by my Personal Representative or by the Trustee.

17

1.    *Allocation of Basis*. The Trustee shall have the authority to allocate basis under §1022(b) or §1022(c) of the Code in a manner that will augment the income tax basis of the assets in the aggregate.

2.    *Allocation of Income*. After complying with any applicable Treasury Regulation with respect to the allocation of expenses against any tax exempt income, the Trustee shall have authority to allocate any expense that is allocable to income under the laws of the State of Florida first against income that is taxed at regular, non-preferential marginal tax rates. In giving the Trustee this authority, I intend that the Trustee have the ability to preserve the advantages of having certain items of income, such as qualified dividends within the meaning of §1(h)(11) of the Code, taxed at lower or preferential marginal rates.

3.    *Allocation of Gain*. The Trustee shall have authority under Treasury Regulation §1.643(a)-3(a), as amended, to include certain capital gains in the computation of distributable net income of any trust hereunder. If the Trustee has to sell assets in order to make any discretionary distribution to the beneficiary or is deemed to have sold an asset in making such a distribution, then the Trustee shall have discretion to include the resulting net long term capital gains in distributable net income, provided that such inclusion comports with the Treasury Regulations then in effect, including but

18

not limited to the requirement that the fiduciary exercise any discretion reasonably and impartially.

B. SPENDTHRIFT. The interest of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily transferred or encumbered. This provision shall not limit the exercise of any power of appointment.

C. TERMINATION OF TRUST. The Trustee may in the Trustee's discretion terminate and distribute any trust hereunder if the Trustee determines that the cost of continuance thereof will substantially impair accomplishment of the purposes of the trust. The Trustee shall terminate and forthwith distribute any trust created hereby, or by exercise of a power of appointment hereunder and still held twenty-one (21) years after the death of the last to die of myself and the beneficiaries of this Instrument in being at my death. Distribution under this article shall be made to the persons then entitled to receive or have the benefit of the income from the trust in the proportions to which they are entitled, or if their interests are indefinite, then in equal shares.

D. INTERPRETATIVE PROVISIONS.

1.      When necessary or appropriate words of any gender shall include both, singular and plural shall be interchangeable, words referring to descent include natural and adopted issue (but shall not include "stepchildren" who are not adopted) and "Trustee" shall include any successor.

19

2.     Any reference in this Instrument to "the Code" shall mean the Internal Revenue Code of 1986, as amended.

3.     Captions are used to facilitate the reading of the Trust Agreement and are not intended to be used for construction purposes.

4.     The rules of construction which pertain to Wills and probate under the laws of the State of Florida, and particularly, Florida Statutes §732.603, shall apply to this Trust.

5.     By the term "Retirement Fund" I mean any retirement plan that is "qualified" under §401(a) of the Code, any individual retirement account or individual retirement trust under §408 or §409 of the Code, any retirement plan, annuity or arrangement under §403 of the Code, and any other similar tax-favored retirement plan.

6.     By the term "internal income" of a "Retirement Fund" I refer to the net income earned by the Retirement Fund during the calendar year, as reported by the Fund Custodian or Trustee, without regard to how distributions from the fund may be treated for income tax purposes in the hands of the recipient.

7.     By the term "net income" of a trust, I refer to trust income as determined by state law less administration expenses charged against trust income by state law, as may be modified by specific language in this

20

Instrument. Net income is deemed to exclude any portion of a distribution from a Retirement Fund to the trust that does not meet the definition of "internal income" under paragraph "6" above and include any portion that does.

8.    Unused GST exemption" means the maximum GST exemption under §2631(a) of the Code reduced by the amount of the GST exemption which I have allocated (or am deemed to have allocated) to property or which my Personal Representative allocates to property passing outside of this Instrument.

E. PRESUMPTION UNDER WILL. In disposing of any trust property subject to a power to appoint by Will, the Trustee may rely upon an instrument admitted to probate in any jurisdiction as the Will of the donee or may assume that he or she died intestate if the Trustee has no notice of a Will left by the donee within three (3) months after his or her death.

F. SPECIAL TRUSTEE. If for any reason the Trustee is unwilling or unable to act as to any property which is an asset of the trust, the Trustee may designate a person or qualified corporation to act as Special Trustee as to that property. Any person or corporation acting as Special Trustee may resign at any time by written notice to the Trustee. Each Special Trustee shall have the powers granted to the Trustee by this Instrument, to be exercised only with the approval of the Trustee to which the net

21

income and the proceeds from sale of any part or all of the property shall be remitted to be administered under this Instrument. If the Special Trustee resigns or no longer serves as Special Trustee for any reason, the Trustee may designate a successor to the Special Trustee.

G. INDEPENDENT TRUSTEE. If any beneficiary hereunder is given the right to remove the Trustee and designate a Successor Trustee of any trust not otherwise includible in such beneficiary's estate for federal estate tax purposes, such Trustee shall not be a related or subordinated party within the meaning of §672(c) of the Code.

H. GOVERNING LAW. Except as to real property which is located outside of Florida and to which local law must apply, the laws of Florida shall govern the validity and interpretation of the provisions of this Instrument.

I. LEGAL INCAPACITY. The Trustee shall make payments which are authorized under any trust directly to a beneficiary who is under any disability or to a third person for his or her sole benefit, without the intervention of a guardian or other representative, and the receipt of such beneficiary or third person, or evidence of such payment for the sole benefit of such beneficiary, shall fully discharge the Trustee for each such payment.

J. GENERATION SKIPPING TRANSFER TAX. The Trustee may divide any trust property hereunder with an inclusion ratio for Generation Skipping Transfer (GST)

22

tax purposes as defined in the Code of neither one nor zero into two separate trusts representing fractional shares of the property being divided, one to have an inclusion ratio of one and the other to have an inclusion ratio of zero, so as to facilitate the allocation of my GST tax exemption to the trust.

The Trustee shall consult with the Personal Representative of my estate respecting the proper allocation of my GST exemption to any property as to which I am the transferor, including any property transferred by me during my lifetime as to which I did not make an allocation prior to my death.

For GST tax purposes, a living descendant who dies no later than ninety (90) days after the subject transfer shall be deemed to have predeceased the transferor.

K. CONSOLIDATION OF TRUSTS. The Trustee may, in the discretion of the Trustee, add trust property of any trust established hereunder to any other separately created trust for the benefit of one or more beneficiaries of any trust created hereunder if the beneficiary of the trust to which the assets are added is the same, if the inclusion ratio of both trusts for generation skipping transfer tax purposes is the same, and if the provisions of both trusts are substantially the same.

L. RETIREMENT FUNDS AND COMMERCIAL ANNUITIES. If a trust under this Instrument is named as the beneficiary of any "Retirement Fund," as that term is defined hereafter, or any commercial annuity, I direct the Trustee as follows:

23

1.    The Trustee shall withdraw from such Retirement Fund or such commercial annuity each calendar year the smallest amount that will satisfy the minimum distribution rules under the Treasury Regulations then in effect. In addition, the Trustee shall escalate the payout of the Retirement Fund or the commercial annuity to the trust at any time and from time to time, as any individual beneficiary entitled to do so under this Instrument shall direct or as the Trustee shall determine in its discretion.

2.    If a Retirement Fund does not permit the Trustee to make withdrawals as specified above, the Trustee shall transfer the Retirement Fund to an IRA which does permit such withdrawals.

3.    In no event may the principal or income of a Retirement Fund be used to pay my debts or other claims against my estate.

4.    At the termination of any trust to which the Retirement Fund (or a commercial annuity) is payable, the Trustee shall notify the Retirement Fund sponsor or custodian (or the issuer of the annuity) of the termination of the trust.

5.    Notwithstanding anything to the contrary herein, Retirement Fund assets shall not be used to pay any estate taxes, debts, administration expenses, or other claims against my estate on or after September 30 of the year following the year of my death, as it is my intention that all such

24

Retirement Fund assets be distributed to or held for only individual beneficiaries after such date.

      6.    If any Retirement Fund is payable to a trust which is separated into two portions for GST tax purposes, the Retirement Fund shall be first paid to the portion of the trust, if any, over which there is no general power of appointment.

    M.    ENVIRONMENTAL MATTERS. The Trustee shall have authority to inspect, assess and monitor businesses and real property (whether held directly or through a partnership, corporation, trust or other entity) for environmentally impaired conditions or possible violations of environmental laws; to remediate environmentally impaired property or to take steps to prevent property which is environmentally at risk from becoming impaired or to take steps to prevent environmental impairment in the future, even if no action by public or private parties is currently pending or threatened; to abandon, segregate or refuse to accept property which may be or become environmentally impaired; and to indemnify itself against environmental liability from trust assets. The Trustee may expend trust funds to do the forgoing, and no action or failure to act by the Trustee pursuant to this paragraph shall be subject to question by any beneficiary or reviewable by an agent.

    N. AGENTS.    The Trustee may employ and pay the compensation of accountants, attorneys, custodians, investment counsel, corporate fiduciaries (acting

25

in agency relationships) and other agents. The compensation of professionals who are engaged to perform services as directed herein or as may be authorized or implicit by the terms hereof shall be reasonable in accordance with prevailing community standards and applicable law.

O. STATUTORY NOTICE. The Trustee may have duties and responsibilities in addition to those described in this Instrument. If you have questions, you should obtain legal advice.

### ARTICLE XV. AMENDMENT AND REVOCATION

I may at any time or times amend or revoke this Instrument in whole or in part by an instrument in writing delivered to Trustee. The trust property to which any revocation relates shall be conveyed to me or otherwise as I direct. This power is personal to me and may not be exercised by my guardian, attorney-in-fact or any other person.

IN WITNESS WHEREOF, I have signed this Instrument on the date set forth above.

DONALD C. HEDSTROM, Individually and as Trustee

We certify that the above instrument was on the date hereof signed and declared by DONALD C. HEDSTROM as the DONALD C. HEDSTROM RESTATEMENT OF LIVING TRUST, in our presence and that we, in DONALD C. HEDSTROM'S presence and in the

26

presence of each other have signed our names as witnesses thereto, believing **DONALD C. HEDSTROM** to be of sound mind at the time of signing.

_Cynthia R. Jones_
(Signature)
_Cynthia R. Jones_
(Printed Name)
_RR#3, Box 5_
(Address)
_Sumner, IL 62466_

_Jeffrey B. Kolb_
(Signature)
_Jeffrey B. Kolb_
(Printed Name)
_1232 Audubon Rd._
(Address)
_Vincennes, IN 47591_

STATE OF ___INDIANA___
COUNTY OF ___KNOX___

The foregoing instrument was acknowledged before me this _15th_ day of

_November_ , 2006 by **DONALD C. HEDSTROM**.

_Susan M. Wittmer_
Notary Public  residing in Daviess County, IN
Printed Name: _Susan M. Wittmer_
My Commission Expires: _12-13-09_

☒ Personally known to me
☐ Produced _____ as identification

27